**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| JEFFREY D. JUSTICE, II,<br><br>Plaintiff,<br><br>v.<br><br>COVETRUS, INC., PHILIP A. LASKAWY, DEBORAH G. ELLINGER, PAUL R. FONTEYNE, SANDRA L. HELTON, MARK J. MANOFF, EDWARD M. MCNAMARA, STEVEN PALADINO, SANDRA E. PETERSON, RAVI SACHDEV, SHARON WIENBAR, and BENJAMIN WOLIN,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>Case No. ___________<br><br>JURY TRIAL DEMANDED |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. On May 25, 2022, Covetrus, Inc. ("Covetrus" or the "Company") announced that it will be acquired by affiliates of Clayton Dubilier & Rice, LLC and TPG Global, LLC (the "Proposed Transaction").

2. On May 24, 2022, Covetrus' Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Corgi Bidco, Inc. and Corgi Merger Sub, Inc. Pursuant to the terms of the Merger Agreement, Covetrus' stockholders will receive $21.00 in cash for each share of Covetrus common stock they own.

3. On June 30, 2022, defendants filed a proxy statement (the "Proxy Statement") with the U.S. Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading, in violation of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Covetrus common stock.

9. Defendant Covetrus is a Delaware corporation and a party to the Merger Agreement. Covetrus' common stock is traded on the NASDAQ, which is headquartered in New York, NY, under the ticker symbol "CVET."

10. Defendant Philip A. Laskawy is Chairperson of the Board of the Company.

11. Defendant Deborah G. Ellinger is a director of the Company.

12. Defendant Paul R. Fonteyne is a director of the Company.

13. Defendant Sandra L. Helton is a director of the Company.

14. Defendant Mark J. Manoff is a director of the Company.

15. Defendant Edward M. McNamara is a director of the Company.

16. Defendant Steven Paladino is a director of the Company.

17. Defendant Sandra E. Peterson is a director of the Company.

18. Defendant Ravi Sachdev is a director of the Company.

19. Defendant Sharon Wienbar is a director of the Company.

20. Defendant Benjamin Wolin is a director of the Company.

21. The defendants identified in paragraphs 10 through 20 are collectively referred to herein as the "Individual Defendants."

**SUBSTANTIVE ALLEGATIONS**

22. Covetrus is a global animal-health technology and services company that helps veterinary practice partners to drive improved health and financial outcomes.

23. On May 24, 2022, Covetrus' Board caused the Company to enter into the Merger Agreement.

24. As set forth in the press release announcing the Proposed Transaction:

> Covetrus® (NASDAQ: CVET) ("Covetrus" or the "Company"), a global leader in animal-health technology and services, today announced that it has entered into a definitive agreement pursuant to which funds affiliated with Clayton, Dubilier & Rice ("CD&R"), a global private investment firm, and TPG Capital, the private equity platform of global alternative asset management firm TPG ("TPG"), will acquire all outstanding shares of Covetrus common stock not already owned by affiliates of CD&R for $21.00 per share in cash, representing an enterprise value of approximately $4 billion. . . .
>
> The proposed transaction has been unanimously approved by a transaction

> committee of independent directors of the Board of Directors of Covetrus (the "Transaction Committee"). The Board of Directors of Covetrus has unanimously approved the proposed transaction on the recommendation of the Transaction Committee. . . .
>
> The transaction is expected to close in the second half of 2022. Completion of the transaction is subject to certain regulatory approvals and the satisfaction of other customary closing conditions, including the approval of Covetrus' shareholders. The transaction will be financed through a combination of cash funded by investment funds affiliated with CD&R and TPG Capital, as well as committed debt financing.
>
> Upon completion of the transaction, Covetrus will become a private company and will no longer be publicly listed or traded on NASDAQ. Covetrus' management team, including Benjamin Wolin, President and Chief Executive Officer, is expected to continue to lead the Company. Covetrus plans to maintain its headquarters in Portland, Maine, and will continue to operate under its current brands.
>
> Advisors
>
> Goldman Sachs & Co. LLC is serving as lead financial advisor to Covetrus. Lincoln International LLC is also serving as financial advisor to Covetrus. Weil, Gotshal & Manges LLP is serving as legal counsel.
>
> Deutsche Bank Securities Inc., UBS Investment Bank, BMO Capital Markets and Mizuho Securities USA LLC have provided committed debt financing for the transaction and are serving as financial advisors to CD&R and TPG Capital. Debevoise & Plimpton and Ropes & Gray are acting as legal counsel for CD&R and TPG Capital.

25. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction, which omits material information.

<u>Financial Projections</u>

26. The Proxy Statement omits material information regarding the Company's financial projections, specifically: the line items underlying the financial projections.

27. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial

advisor in support of its fairness opinion.

## Financial Analyses

28. The Proxy Statement omits material information regarding the financial analyses conducted by Goldman Sachs & Co. LLC ("Goldman Sachs"). When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

29. Regarding Goldman Sachs' Illustrative Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the terminal values utilized by Goldman Sachs; (ii) the individual inputs and assumptions underlying the discount rates, perpetuity growth rates, and multiples utilized by Goldman Sachs; and (iii) the number of fully diluted shares utilized by Goldman Sachs.

30. Regarding Goldman Sachs' Illustrative Present Value of Future Share Price Analysis, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rate and multiples utilized by Goldman Sachs; and (ii) the number of fully diluted shares utilized by Goldman Sachs.

31. Regarding Goldman Sachs' Selected Precedent Transactions Analysis, the Proxy Statement fails to disclose: (i) the individual metrics for the transactions utilized by Goldman Sachs; (ii) the closing dates of the transactions utilized by Goldman Sachs; and (iii) the total values of the transactions utilized by Goldman Sachs.

32. Regarding Goldman Sachs' Premia Paid Analysis, the Proxy Statement fails to disclose: (i) the transactions utilized by Goldman Sachs; and (ii) the premiums paid in the transactions utilized by Goldman Sachs.

Banker Engagements and Background of the Proposed Transaction

33. The Proxy Statement fails to disclose the terms of Lincoln International LLC's ("Lincoln") engagement, including: (i) the fees Lincoln has received or will receive in connection with its engagement; (ii) the percentage of Lincoln's fee that is contingent upon the consummation of the Proposed Transaction; (iii) whether Lincoln has conducted prior services for any parties to the Merger Agreement or their affiliates; (iv) the timing and nature of the services; and (v) the amount of compensation received by Lincoln for providing the services.

34. The Proxy Statement also fails to disclose whether the Company entered into any nondisclosure agreements that contained don't ask, don't waive provisions.

**COUNT I**

**Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Covetrus**

35. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

36. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Covetrus is liable as the issuer of these statements.

37. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

38. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

39. The omissions and false and misleading statements in the Proxy Statement are

material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

40. The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

41. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

42. Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the Exchange Act Against the Individual Defendants

43. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of Covetrus within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Covetrus and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause

them to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

47. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: July 11, 2022

**GRABAR LAW OFFICE**

By: /s/ Joshua H. Grabar

Joshua H. Grabar (#5906953)
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
267-507-6085
jgrabar@grabarlaw.com

*Counsel for Plaintiff*